**John A. PATELLA, Appellant,**

v.

**Billy J. JONES et ux., Appellees.**

No. 15289.

Court of Civil Appeals of Texas.

Dallas.

May 3, 1957.

Rehearing Denied June 14, 1957.

Templeton & Gauen, Dallas, for appellant.

W. H. Crunk, Henry Pharr, Bill Pemberton and O. S. Moore, Greenville, for appellees.

DIXON, Chief Justice.

This is an appeal from an adverse judgment in an action for a bill of review instituted May 25, 1956 by appellant, John A. Patella. Appellant, the father of two minor children aged six years and five years re-

spectively, sought to have set aside a prior judgment rendered in October 1955, permitting the adoption of the children by appellee Billy Joe Jones.

The mother of the children is appellee Florence Jones who was divorced from appellant in 1952 and is now the wife of appellee Billy Joe Jones. At the time of the divorce, care and custody of the children were awarded to their mother. For reasons which will be apparent as the facts are set out herein, the children's mother did not ask for an order requiring appellant to pay child support, and no such order was made by the trial court.

Appellant did not give written consent for the adoption of his children, nor was he ever served with citation or notice in connection with the adoption proceeding. The children had not been declared dependent and neglected. So far as the record shows appellant was not aware of the pending application for adoption, and did not learn of the adoption until some time after the order was entered.

In his petition for adoption Billy Joe Jones did not allege abandonment of the children by appellant. He did allege that appellant had not contributed anything to either of the two minor children for a period of two years. It was on this ground that the adoption was ordered without notice to appellant. Art. 46a, § 6, V.A.C.S.

Appellant's appeal is based on two alleged points of error: (1) There was no evidence or finding that appellant had abandoned the children for a two-year period; and (2) there was no evidence of a substantial nature that appellant had failed for a period of two years to contribute to the support of the children commensurate with his ability to do so.

■ Under his first point appellant contends that it was necessary under Art. 46a, § 6, V.A.C.S., to plead and prove both that appellant had abandoned the children *and* that he had failed to contribute to their support commensurate with his financial ability.

We are unable to agree with appellant. Prior to its amendment in 1951 the statute did provide as appellant contends. But the amendment changed the conjunctive word *and* to the disjunctive word *or,* and further expressly provides: " * * * then, *in either event,* it shall not be necessary to obtain the written consent of the living parent or parents * * *." All the facts which are material to our decision in this case arose after the effective date of the amendment. Therefore the statute as amended must control our holding.

Appellant relies on Johnston v. Chapman, Tex.Civ.App., 279 S.W.2d 597; Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405; and Jones v. Willson, Tex.Civ.App., 285 S. W.2d 877. These cases are not in point here. In the Johnston case the judgment of adoption which was under attack was rendered September 15, 1949, prior to the effective date of the amendment. In the Lee case the appellate court applied the terms of the statute as they were before the 1951 amendment because plaintiffs had pled and tried their case in the trial court on the theory of abandonment *and* failure to support, and also because plaintiffs had failed to uphold their allegation with sufficient evidence. In the Jones case the court, applying a strict construction to the statute, held that the petition for adoption did not allege nor was the evidence sufficient to show *voluntary* abandonment, *or* failure to support *commensurate with the parent's financial ability.*

We overrule appellant's first point on appeal.

In his second point on appeal appellant asserts that there was no evidence "of a substantial nature" that appellant had failed for two years to contribute to the support of his children commensurate with his ability to do so. We interpret this point to challenge the sufficiency of the evidence to support the judgment of the court on the issue

of support. Consequently it becomes necessary for us to set out material portions of the evidence at some length and in considerable detail.

Appellant and appellee Florence Jones were divorced in November 1952. She married appellee Billy Joe Jones in April 1953. The order allowing the adoption was entered in October 1955.

There is uncontradicted evidence in the record in regard to many of the material facts. In March 1950, while still married to appellee Florence Jones, appellant received a wound which severed his spinal cord five inches below his shoulders. This wound resulted in complete paralysis of his body from his middle chest down to his toes. Immediately following the injury he was hospitalized for ten or twelve weeks. He has been hospitalized between twenty and twenty-five times since being injured in March 1950. On a number of occasions he was in John Sealy Hospital in Galveston, Texas, a State hospital, where he went as a ward of the State because he was unable to pay hospital, medical or doctors bills. His last hospitalization was in John Sealy Hospital in December 1955. Between March 1950 and December 1955 he was in a hospital or in bed under a doctor's orders fifty percent or more of the time. He is now confined to a wheel chair. Due to bed sores and circumstances causing skin burns and other complications it is still necessary every day to apply medical dressings to parts of his body to enable him to withstand the discomforts of his wheel chair. Appellee Florence Jones, his former wife, herself testified that from the time of his injury in March 1950 until the divorce in 1952, appellant was dependent on his relatives for support.[1]

At this point we deem it appropriate to quote from the medical testimony:

"Q. Can you give us a description of his present physical condition? A. His present condition, I don't know too much about because I haven't seen him or examined him for some period of time now. I can tell you a little about him when I first saw him.

"Q. When was that? A. I first saw him in the spring of 1952, and, of course, he had been injured some two years prior to that time, I believe. I saw him for complications of the injury rather than the injury itself. At that time he had lost the use of his body from the center of his chest down. Decubitus ulcers, which is a bed sore or sheet burn; he had urinary complications, frequent bouts of chills and fever. He was having gastric *admonible* (?) spasms which was causing him a great deal of disability at the time. * * *

"Q. Dr., does your medical history show that this man has a severed spinal chord? A. Yes sir.

"Q. Below that nerve center where it is severed, he is paralyzed from there down? A. That is true.

"Q. He doesn't even have feeling from there down? A. That is true.

"Q. It is impossible for this man to have any use of his body below this point of paralysis. A. I suppose that is true. His lower limbs enable him to sit.

"Q. It is weight that though he can't feel it, it provides him to sit, otherwise he couldn't sit? A. Yes, sir, it provides him with balance.

"Q. Dr., how does this man urinate? A. He has what is called a superpubic which

[1]. The record indicates that in January 1956, appellant obtained employment with an insurance company in Dallas, Texas, as an assistant actuary at a salary of $280 per month. Appellant says that this is the first gainful employment he has had since his injury in 1950. Such employment, having started after the date of the adoption, cannot be taken into consideration in determining whether for two years prior to the adoption appellant contributed child support commensurate with his financial ability.

enters his bladder and his bladder drains in that manner.

"Q. In other words, his bladder drains into this tube? A. That is right. Of course, he has some sort of a stopper on it so that he can empty the tube.

"Q. Is this a permanent condition? A. It probably is. * * *

"Q. Is the type injury Johnny received in having his spinal chord severed the type of injury to incapacitate a person? A. Yes sir. * * *

"Q. Since he was not a trained man at that time and had no professional training it would mean that he would have to learn an entirely new method of livelyhood? A. Yes sir. * * *

"Q. In fact, the fields that are open to a man in his physical condition, we might say, are very limited, are they not? A. Yes sir. * * *

"Q. Dr., is it reasonable that the person who received the type injury that Johnny has, coupled with the complications you have personally observed, would spend a certain period of time in and out of hospitals? A. Of course, he has done so. Yes.

"Q. Is it also true with that type of injury and complications there would be considerable medical and hospital expense should they be able to pay it? A. Yes sir.

"Q. Dr., could you give us any approximation of what period of time you did treat Johnny? A. From 1952 intermediately to the latter part of 1955 and I might have seen him and advised him in the early part of 1956. * * *

"Q. These conditions that we are talking about, his general condition, was it the same all through that period? A. Yes, but he had periods when he was worse and periods when he was better, but there was no remarkable advance in his condition I don't suppose."

On September 16, 1953 appellant received $2,250 in settlement of a damage suit arising out of his injury. His testimony and it finds corroboration in other evidence in the record, is that he paid about $400 in debts. Then he paid $1,700 for a 1951 Oldsmobile automobile especially equipped with hand controls to enable him to drive. This car was to be used and later was used in the operation of a cleaning and pressing business which appellant was about to start. Immediately after the purchase of the Oldsmobile, he mortgaged it to secure a $1,000 loan. This $1,000 together with $250 received from the sale of an older car, he used to start the cleaning and pressing business. Appellant's father had given him the older car. In order to obtain enough additional capital to start the cleaning and pressing business he also borrowed $2,136 from a bank, which bank loan was secured by a mortgage on the business assets. In addition to the above sources of capital, appellant's father advanced about $1,000 which went into the business.

The cleaning and pressing business did not prosper. There is conflicting testimony as to the gross volume of business done by the establishment, but the evidence is that it did not show a net profit. Appellant says that it lost money. After attempting for 19 months to operate the business he sold it in June 1955 for $3,950. Part of the agreement of sale was that appellant was to pay all outstanding debts. According to appellant, after paying said debts, which included a balance of $1,600 on the bank note, $1,000 owed to his father for money advanced, about $1,200 owed to merchants, and $195 as a sales commission, there was no money left for him

Appellant did not pay any child support out of the $2,250 settlement money, nor out of the $3,900 sales price on the cleaning business. His explanation is that he invested the $2,250 in the business in the hope that it would enable him to make a living; and that after paying off all outstanding debts, as he was required to do in connection with

the sale of the business, there was nothing left for him out of the sale price of $3,900.

There is evidence that since the divorce appellant has made small contributions to to the support of the children. These contributions were made through his mother, the children's grandmother, who would purchase clothes and toys for the children. Appellant's mother and father, the children's grandparents, have also bought clothes for the children.

Appellee Florence Jones, mother of the children, testified at considerable length. Much of her testimony, unfavorable to appellant as a husband and father, was concerning matters which took place prior to appellant's injury and prior to the divorce. As that portion of her testimony is more pertinent to the grounds for her divorce in 1952 than it is to the issue now before us, we shall not further discuss it.

She did testify, however, that appellant had not contributed to the support of the children since the divorce. She had not asked him to do so. In fact, if he had been a man of means she would not have asked him to contribute to the support of the children. He has given them Christmas presents and birthday presents. The few times she had seen her husband since the divorce, he wanted to make better arrangements about seeing the children. He wanted to see them on his own rather than through his mother. Appellee would not let the children visit him alone because he drank some and she had seen him with some people she didn't think desirable. He lived in the back of the cleaning establishment and in his condition he was not able to take care of the children, so she thought the best place for him to see them was at his mother's home. She could not say that appellant was not interested in the children; it is true that the children have always had a warm affection for appellant. She did not know anything about appellant's financial condition after the divorce.

Is the evidence in this case sufficient to support the court's finding that for a period of two years prior to the adoption in October 1955 appellant did not contribute to the support of his children commensurate with his ability to do so? It is true that during the two-year period in question appellant contributed very little to the support of his children. But incapacity resulting from his injury reduced him to circumstances of dire necessity. Much of the time he was dependent upon his relatives for his own support. Faced with the necessity of trying to find some means to become self-supporting, he used the money he received as damages for his injury to invest in a cleaning business. Though his business venture proved to be ill-starred, we do not believe that appellant is to be criticized for trying to earn his own living. After a careful consideration of the whole record, we have concluded that the evidence is insufficient to meet the statutory requirements which must be met before children may be adopted without the written consent, or notice or knowledge of a parent. Jones v. Willson, Tex.Civ.App., 285 S.W.2d 877; Lee v. Purvin, Tex.Civ.App., 285 S.W.2d 405. Appellant's second point on appeal is sustained.

The judgment of the trial court is reversed and the cause remanded to the trial court for another trial.